J. S. THORNTON & CO. *vs.* SMITH GRANT & CO.

The erection of a wharf in tide waters is not a nuisance, if the navigation is not injured by the erection.

A court of equity will not interpose by injunction to prevent the erection of a wharf in such waters, unless it appears that the party petitioning will be materially and substantially injured by such erection.

Defendants, being the owners of an estate upon a navigable river, were erecting a wharf against their estate, extending out into said river. At the suit of the complainants, who were the owners of the estate next below them on said river, a preliminary injunction had been issued restraining them from the completion of their wharf. Upon a motion to dissolve said injunction, *held*, the evidence showing that the injury to the complainants caused by the completion of said wharf would be slight and contingent, and that, on the other hand, the wharf would greatly promote the defendants' trade and business, that the injunction could not be maintained, except so far as to prevent the respondents from so constructing the wharf as to spread its materials into the water in front of the plaintiffs' estate.

The respective water fronts of two adjoining properties in a case where a solid rock projecting out to the main channel has preserved the shore of one from detrition at that point, but has allowed quite a deep inward curve beyond it, while that of the other has conformed more to the course of a river, determined by drawing a line along the main channel in the direction of the general course of the current in front of the two estates, and from said line and at right angles to it drawing a line to meet the original division line on the shore. *Held,* that a court of equity would prevent, by injunction, encroachment upon a front so defined, by an adjoining owner, by building out a wharf upon it.

The rules for dividing water fronts or flats adopted in Maine and Massachusetts respectively, stated and distinguished.

BILL IN EQUITY. The facts of the case, which now came before the court on the respondents' motion to dissolve a preliminary injunction previously granted, are stated in the opinion of the court.

*James Tillinghast*, for complainants.

*Browne*, for respondents.

DURFEE, J. This case comes before us on a motion of the defendants to dissolve a preliminary injunction, restraining them from the further erection of a wharf, already partly built, in Seekonk River, against their estate, which is situated on the west

bank of said river, in the village of Pawtucket. The plaintiffs are the owners of the estate next below that of the defendants, and separated from it by Spring Street, so called. They are extensively engaged in the coal and lumber business, and, for the convenience of their business, have erected on their estate wharves and other expensive improvements. They insist upon a continuance of the injunction, upon the ground that the proposed wharf will be a public nuisance by reason of the obstruction which it will cause to the navigation of the river, the same being a tidal river, and will be especially injurious to them by incommoding the prosecution of their business, and by causing the river to shoal and fill up in front of their wharves, thereby destroying or greatly deteriorating their estate for the purposes to which it is adapted. The defendants, on the other hand, contend that the proposed wharf will not be a nuisance, and that it will not inflict any especial injury upon the plaintiffs, — at least none which will be irreparable in its effect or incapable of pecuniary compensation. In support of these contradictory views a great deal of testimony has been submitted, consisting of affidavits, plats, a chart of the river, and the record of the layout of a highway extending into the waters which the defendants propose to occupy with their wharf. The general scope and purport of this testimony we will briefly recapitulate.

The land constituting the estates of the plaintiffs and the defendants formerly belonged to one person, who sold to the defendants, in 1857, and to the plaintiffs afterwards. It lay on a bend or recess of the river, extending from Lamper Rock, so called, on the southeasterly part of the plaintiffs' estate, to a point opposite Seal Rock, so called, on the northeasterly part of the defendants' estate. After 1864 and 1865 both these estates were improved by the erection of wharves, and by filling out into the river; but in such a way that the flexure of the shore, though changed and lessened, was not destroyed. The estates were but a short distance below the head of navigation, and the river, in front of them, was narrow, with two channels which were ordinarily used for navigation, the one close to the east bank and the other in the centre. Sailing craft of the larger kind usually navigated these channels by the aid of tug-boats, or by being warped or hauled in and out. The plaintiffs claim, and in sup-

port of their claim, submit affidavits to the effect that there was, in addition to these two channels, a third, which left the middle channel at Lamper Rock, and, winding along near the west shore, reëntered the middle channel a little above Seal Rock ; that this third channel was navigable at all states of the tide, being from forty to a hundred feet wide, and from five to seven feet deep, at mean low water ; that, up to the time when the proposed wharf was partly built, they were accustomed to use it with advantage in the navigation of vessels engaged in their business, and especially for the purpose of egress from their wharves when there were several vessels at them ; that the portion of the proposed wharf now built obstructs the channel, and even somewhat incommodes the accustomed use of their wharf adjacent thereto ; and that the proposed wharf, if carried to completion, will entirely close the channel to the north of their estate, and, by changing the current and accumulating a large mass of dirt and gravel in the river near them, will inevitably tend to shoal the waters in front of their wharves.

The defendants admit that the river is navigable in front of the plaintiffs' wharves ; but they claim, and in proof of their claim, they submit affidavits to the effect, that at and above Spring Street, especially in the place of the proposed wharf, the river is much shallower, being only about three feet deep (and one witness says one foot deep) at ordinary low tide, except where the bottom is lowered by hollows and depressions ; that the river was never used by the plaintiffs above Spring Street for their vessels when loaded, and only very seldom when unloaded, their usual course being, after unloading their vessels at their wharves, to haul them out stern foremost, the way they came in ; and that only two loaded vessels ever made the attempt to pass up the river along past Spring Street, both being vessels of the defendants ; one of which, favored by the tide, succeeded, and the other run aground. The defendants also submit affidavits to the effect, that the plaintiffs themselves, at one time, entertained a plan of filling out in front of their estate, across the alleged channel ; that they also proposed the establishment of a harbor line, and agreed with the defendants that the front of their proposed wharf would be a proper limit for the line ; and that, in their conversations with the defendants about the proposed wharf,

they did not object on the ground that it would obstruct navigation, but only on the ground that it would extend in front of their estate, and one of the plaintiffs assented to the filling provided it was not carried in front of their estate.    The defendants also submit the record of the layout of a highway by the town council of North Providence, which upon appeal was confirmed by the Court of Common Pleas.    By the record it appears that the highway so laid out (the same never has been opened) passes across the place of the proposed wharf, and in front of the wharf of the plaintiffs.    The record also shows that under the ruling given by the Court of Common Pleas, on the trial of the appeal, the jury could not have found in favor of the establishment of the highway, without also finding that the river where the highway was laid out was not of any practical use for the purposes of navigation.    This highway was petitioned for by the owners of the estate now owned by the plaintiffs.

Besides the testimony above referred to, we have examined the chart copied from the United States Coast Survey.    The chart conveys to us the impression that the river, at the place of the proposed wharf, is not so deep as the witnesses for the plaintiffs represent, and deeper than the witnesses for the defendants represent, being of a depth somewhere between — perhaps not far from half way between — the two representations.

We think it is pretty clearly shown by the testimony that the river, at the place of the proposed wharf, is navigable to an extent which, under certain circumstances, might be valuable, but which, in view of the two channels ordinarily used for navigation, is of no practical value to any one except the plaintiffs and the defendants ; that to the plaintiffs it is of no practical value for navigation by loaded vessels, and only occasionally, when their wharves are crowded, for unloaded vessels, — the ordinary egress for unloaded vessels even, being an egress backwards past Lamper Rock.

The defendants contend that the erection of a wharf in tide waters, where the injury is so inconsiderable, is not a public nuisance.    At common law the fee of the soil in tide waters below high-water mark is in the crown, and consequently, in England, every wharf that is built, and every rood of land that is filled in, by the riparian proprietor, without leave of the crown, is a tres-

Thornton *v.* Grant.

pass upon its right — technically termed a purpresture. But every purpresture is not a public nuisance; for the crown, while it may license a purpresture, cannot license a public nuisance. " It is not," says Lord Hale, " *ipso facto* a common nuisance, unless indeed it be a damage to the port and navigation ; " and he adds, " whether it be a nuisance or not is *quæstio facti* and to be determined by a jury upon evidence, and not a *quæstio juris.*" De Jure Maris, Harg. Tr. 85. The English cases, however, do not very clearly indicate the test or criterion which distinguishes a mere purpresture from a common nuisance. In *Rex* v. *Grosvenor et al.* 2 Stark. 511 (decided in 1819), the defendants were indicted for a nuisance committed by the erection of a wharf between high and low-water mark, and extending for a considerable space along the river. Lord Chief Justice Abbott instructed the jury that the public had a right to all the convenience which the former state of the river afforded, unless by the change some greater degree of convenience was rendered. The place occupied by the wharf had previously been a recess where, there was evidence to show, vessels could find shelter in time of storm at certain states of the tide, and his lordship instructed the jury that, although vessels were not able to enjoy this benefit at all times, yet if they could derive benefit from it for the space of two hours each tide, they were entitled to that advantage, unless the want of it were compensated by some superior advantage resulting from the alteration. In *Rex* v. *Russell*, 6 B. & C. 566 (decided in 1827), the nuisance complained of was the erection of two staiths for loading ships with coals, one of which extended nearly 150 feet, and the other 130 feet from high-water mark into the river, and each of which extended a few feet beyond low-water mark. The jury were directed by Justice Bayley to acquit the defendants, if they thought that the abridgment of the right of passage was for a public purpose and produced a public benefit, and if it was in a reasonable situation, and a reasonable space was left for the passage of vessels navigating the river ; and he pointed out to them that the staiths were not merely a private benefit, for that by means of them the coals were brought to market at smaller expense and in a better condition, in both which respects the public were benefited. This direction, on review before the full bench, was approved, Justices Holroyd and

Bayley concurring, and Lord Tenterden, C. J., dissenting. The ground of Lord Tenterden's dissent was, that the benefit which the public might derive from the staiths, by getting their coals cheaper in price and better in quality, could not be set off by way of compensation for any injury resulting from the staiths to navigation. He said the proper question was whether the navigation was injured, and that if the question had been left to the jury in that form, and a verdict had been found for the defendants, he did not see that any objection could have been properly made to it. Lord Tenterden and Chief Justice Abbott are the same person, and therefore, reading his charge in *Rex* v. *Grosvenor*, in the light of his dissenting opinion in *Rex* v. *Russell*, we may assume that he did not mean to say anything more in his charge than that the wharf in question would be a nuisance if it materially injured navigation in any way, unless in some other way it benefited navigation to a greater extent. In *Rex* v. *Ward*, 4 A. & E. 92, the doctrine of compensation, as laid down in *Rex* v. *Russell*, was pointedly condemned, and has never since been recognized. See *Rex* v. *Morris*, 1 B. & Ad. 441 ; *Reg.* v. *Betts*, 16 Q. B. 1022. In *Rex* v. *Tyndall*, 6 A. & E. 143 (decided in 1837, and affirmed in 1854, in *Reg.* v. *Russell*, 3 Ellis & B. 942), it was held not to be a nuisance to erect piles and planking in a harbor if it was only in some extreme cases that the harbor was thereby rendered less secure. In *Reg.* v. *Randall*, 1 Carr. & M. 496 (tried at nisi prius in 1842), the defendant was indicted for erecting a wharf between high and low-water mark, where boats were used before to pass, and Wightman, J., left it to the jury to say, whether the wharf was an impediment to the navigation of the river by any description of vessels or boats, and told them not to consider the circumstance that a benefit had resulted therefrom to the general navigation of the river. In *Reg.* v. *Betts*, 16 Q. B. 1022 (1850), it was held that a bridge built partly in the bed of a navigable river is not necessarily a nuisance, the true question being whether a damage accrues to the navigation in the particular locality, which is a question for the jury.

The doctrine deducible from these cases is, that the erection of a wharf in tide waters is not a nuisance, if the navigation is not injured by the erection. If, however, we inquire what is the degree of obstruction which, in contemplation of law, amounts to

an injury to navigation, the cases do not furnish an entirely satisfactory answer. In some of the cases this question appears to have been left very much at large to the good sense of the jury ; while in others, as in *Rex* v. *Grosvenor*, and in *Rex* v. *Randall*, language was used which would seem to imply that almost any inconvenience to navigation would constitute an indictable nuisance. And see *Folkes* v. *Chad*, 3 Doug. 340 ; *The Mayor of Colchester* v. *Brooke*, 7 Q. B. 339, 373 ; and *Gann* v. *The Free Fishers of Whitstable*, 11 H. L. Cas. 192.

The law as declared in the English cases has been recognized by the courts of this country, and has been applied in some cases with liberality towards the riparian proprietor. The earliest cases are *Commonwealth* v. *Pierce* (1790), and *Commonwealth* v. *Crowningshield* (1796), reported in 2 Dane's Abr. 696, 697. These were both Massachusetts cases, and in that state the local law, originating in a colonial ordinance, confers ownership of the shore between high- and low-water marks, for one hundred rods, if the tide ebbs so far, upon the adjoining proprietor, subject to the qualification that he shall not have power to stop or hinder the passage of boats or other vessels. Both were cases of wharves : the wharf in the first case being built out to the channel, or near it ; and in the second, being partly below low-water mark. In the first case, the court said that wharves are useful and necessary to trade, and might, under the colonial ordinance, and by the common practice of the country, be built out to low-water mark, or further, if not injurious to the public interest. Verdict for the defendant, because the navigation was left convenient. In the other case, the court say, " It is no obstruction to build out a wharf, if a sufficient passage or way is left for the public." In *Commonwealth* v. *Wright et al.* 3 Am. Jur. 185 (1830), the defendants were indicted for erecting a wharf extending below the line of low-water mark and into the channel. Thacher, J., trying the case at nisi prius, directed a verdict against the defendants, unless the jury were satisfied that the benefit to navigation would exceed the injury. See also *Keen* v. *Sutton*, 5 Pick. 492 ; *State* v. *Wilson*, 42 Me. 9, 26. So also the right to wharf out, so long as the navigation is not impeded, or at least the fact that such a wharf is not a nuisance, has been recognized in Connecticut : *East Haven* v. *Hemingway*, 7 Conn. 186 ; New York : *Wetmore* v. *The Atlantic White Lead Co.* 37 Barb. 70, 96 ; and Flor-

ida: *Geiger* v. *Filor*, 8 Fla. 325. Likewise the rule has been recognized as applicable to our great inland rivers and lakes. *Bainbridge* v. *Sherlock*, 29 Ind. 364; *Dutton* v. *Strong*, 1 Black, 23. In New Jersey, by usage having the force of law, the riparian owner may, in the absence of restrictive legislation, reclaim the shore to low-water mark, and may hold it, when so reclaimed, as his own even against the state. *Gough* v. *Bell*, 2 Zabr. 441; *S. C.* 3 Ibid. 624; *Stevens* v. *Patterson & Newark R. R. Co.* 34 N. J. 532. And it seems that the common understanding, in that state, carries the right even below low-water mark, provided there is no obstruction of navigation. See opinion of Elmer, J., 3 Zabr. 658.

In this state we have no reported decision on the subject. Here as elsewhere, doubtless, the public right is paramount; but, at the same time, we know of nothing in the policy of the state, as evinced either by legislation or by prevalent usage, which would lead us to regard a wharf as a nuisance, merely because it occupies water which, but for such occupation, might sometimes be used for navigation. The great end of navigation is commerce, and commerce cannot be carried on to advantage without convenient wharves. There are many wharves in the state which extend beyond low-water mark, and we have no reason to suppose that it would be a gain for navigation to reduce them within that limit. In deciding whether the proposed wharf is now, or will be when completed, a nuisance, we ought to bear this in mind; as we should also bear in mind the character of the river and existing modes of navigation. Regarding the wharf in that way, can we say that it is or will be a nuisance? Can we say that it will abridge or obstruct the navigation, — not in some strained or technical sense, but as practical men consider abridgment and obstruction? We are not prepared to say that it will; neither are we fully prepared to say that it will not. The question is eminently a question for the jury; and if the case were before us upon the prayer for a permanent injunction, and were not refused on other grounds, we should wait until the verdict of a jury could be obtained. But we are now to decide simply whether the plaintiffs make a case for a continuance of the injunction pending the litigation; for, considering the manner in which the injunction was obtained, we think it is for the plaintiffs to show cause for its continuance.

Thornton *v.* Grant.

The question then is, ought the defendants to be restrained, even by preliminary injunction, from the completion of their wharf, for the reason that it will be a public nuisance, when upon the evidence it is so 'very doubtful if it will be such. If we were satisfied that the defendants could not proceed without exposing the plaintiffs to the danger of a great and irreparable mischief, we should answer the question in the affirmative, and should not hesitate to enjoin them until their right to proceed could be fairly adjudicated. But we are not so satisfied. The only use which the plaintiffs have for the waters, proposed to be occupied, is as a way of egress for their unloaded vessels. This use is infrequent; their practice being to take their vessels in and out the same way, except when their wharves are crowded. They doubtless could take them out the same way always, though sometimes an egress the other way is more convenient. Smith Grant, one of the defendants, testifies that he never saw more than three vessels passing out up the river from the wharves of 'the plaintiffs; Geo. F. Newell, another defendant, that not more than two or three a year pass out in that way; and Richard M. Payne, who for two or three seasons has superintended dredging in the vicinity, testifies that he has observed that the vessels of the plaintiffs are hauled in and out the same way, and that he never saw one going out another way. When the plaintiffs first learned that the wharf was proposed, they objected to it simply on the ground that it would encroach upon the space in front of their estate; and one of them, when assured that it would not, said there would be no objection. If they had thought the water of any great value to them as a way of egress, they would hardly have failed then to have objected to its obstruction. The defendants say, moreover, that when their wharf is built and the river dredged as they intend, its navigability will be improved rather than injured, even for the plaintiffs. This, of course, may not be so, though it seems not unreasonable. Very evidently, therefore, the injury which the plaintiffs will sustain, by the interruption of their passage up the river, will not be a very serious injury; and we do not think that, for an injury so slight and so contingent, they are entitled to have the defendants restrained from improving their estate, in a manner which will so greatly promote their trade and business, upon the ground that the im-

Thornton v. Grant.

provement, when made, will be a public nuisance, without better evidence to support the charge. *Irwin* v. *Dixon*, 9 How. (U. S.) 10, 27 ; *Bigelow* v. *The Hartford Bridge Co.* 14 Conn. 565 ; *Zabriskie* v. *Jersey City & Bergen Railroad Co.* 2 Beas. (N. J.) 314 ; *Morris & Essex Railroad Co.* v. *Prudden*, 20 N. J. 530 ; *Laughlin* v. *The President, &c. of Lamasco City*, 6 Ind. 223 ; *Richards's Appeal*, 57 Pa. State, 105 ; *Attorney General* v. *United Kingdom Electric Telegraph Co.* 30 Beav. 287.

The plaintiffs claim that the wharf, if built, will change the current of the river, and that, in consequence thereof, the mud and sediment of the river will fill in and shoal the water in front of their estate. We do not think the evidence to support this claim is sufficient to warrant an injunction.

They also claim that the dirt and gravel, of which the wharf is constructed, being uninclosed by walls, spreads into the water in front of their estate and interferes with the accustomed use of their wharves. This, if the claim be correct, is an injury to which they ought not to be subjected ; but the defendants, without being enjoined from completing their wharf, may be enjoined from so constructing it as to produce such a result.

We think, therefore, that the injunction should be dissolved, or should only be so far continued as to prevent the defendants from constructing their wharf in such a manner as will allow the materials of which it is constructed to spread into the water in front of the estate of the plaintiffs. *Decree accordingly.*

POTTER, J., dissenting. Considering the ancient practice and usage in this state, and about the prevalence of which I do not suppose there can be a doubt, and it having been always understood that riparian owners had the right to wharf out as against everybody but the state, which would only interfere to protect navigation and the public interest, it would follow that if there was no channel here, and no interference with navigation, on which point the evidence seems to be contradictory, the defendants would have a right to wharf out against their land. But the plaintiffs have the same right, and neither has a right to encroach on the other, or to wharf out so as to occupy a portion of the flats in front of the other.

There are cases where it has been held that a person might build an island in navigable waters and might hold it, but no case that I know of that would justify a person in building up such

an island in such contiguity to a person's land às to cut off or straiten his means of access to the channel.

The advantages derived from bounding on tide water constitute a large portion of the value of the banks. The Supreme Court of the United States, and also this court, have held these privileges to be property of which no one had a right to deprive the riparian owner. If the bank of the river was nearly straight and the dividing line between the parties ran at right angles to the shore, there would be no difficulty. Neither would or could claim a right to run out a wharf in front of the other. And if the dividing line ran diagonally to the bank, neither should be permitted to follow that line so as to occupy his neighbor's front.

Now, in the present case, the banks of both parties are in a bend of the river, and the plat itself shows that if the defendant wharfs out on the line proposed, he would not leave for the plaintiff his fair proportion of the flats in this bend, upon whatever principles the lines should be drawn. And for this reason I think the complainant entitled to the injunction he applies for.

After the rendition of the foregoing opinion, the case came again before the court upon the complainants' application that a dividing line might be run between the parties' estates, and the respondents be enjoined from filling out or in any manner encroaching over the line, or otherwise obstructing the complainants' water front.

*James Tillinghast*, for complainants.

*Browne*, for respondents.

DURFEE, J. The plaintiffs have amended their bill since the former hearing, so as to present more clearly a ground of relief which was not expressly passed upon by the court at that hearing. They allege that the proposed wharf, if built as the defendants are proceeding to build it, will occupy a portion of their water front, and they claim that, if this be so, they are entitled to an injunction to prevent it. We agree with them in this view. The ground upon which we refused to continue the injunction at the former hearing was that the defendants were wharfing out in front of their own land, and that the evidence did not show that the wharf, when completed, would materially impair or obstruct the public right of navigation. If, however, the defendants are wharfing out not only in front of their own, but also in front of

the plaintiffs' land, then the case presents a different question, which we are not prepared to decide in favor of the defendants. If they propose to occupy with their wharf any portion of the water in front of the plaintiff's land, we will have the injunction so framed as expressly to forbid the encroachment. See *Rose* v. *Graves*, 6 Scott N. R. 645.

Are the defendants proceeding to construct their wharf in such a manner that it will encroach upon the water front of the plaintiffs ? The plaintiffs do not claim that they are so constructing it that it would extend across the division line between them and the defendants, if that line were prolonged ; but they claim that that line prolonged, owing to the conformation of the shore, is not the proper limit of their water front. They claim that their water front covers an extent which can be ascertained only by the application of a rule which has been frequently applied in Massachusetts in the division of tide flowed flats. The rule is this : Where the flats lie in a cove or recess, a front line is to be drawn from headland to headland, and from the front line so drawn division lines are to be drawn through the flats to meet the division lines of the upland at their intersection with the shore, and are to be so drawn as to give to each proprietor a length of the front line proportionate to the length of his shore line at ordinary high-water mark. *Rust* v. *Boston Mill Corporation*, 6 Pick. 158 ; *Deerfield* v. *Ames*, 17 Pick. 41 ; *Hopkins Academy* v. *Ames*, 9 Cush. 544; *Wonson* v. *Wonson*, 14 Allen, 71. This rule has been approved in other states, and in the Supreme Court of the United States. *O'Donnell* v. *Kelsey*, 10 N. Y. 415 ; *Miller* v. *Hepburn*, 8 Barb. 332 ; *Johnson* v. *Jones*, 1 Black, 209. The rule, when applied to a cove or inlet of regular outline, is probably as just as any which can be devised. But it is easy to conceive a shore so irregular in its outline that the rule, if applied without modification, would be very unsatisfactory in its results. Indeed Chief Justice Shaw admits, in *Deerfield* v. *Ames*, that, where the shore line is elongated by deep indentations or sharp projections, its length should be reduced by equitable and judicious estimate, before it is employed in making the apportionment. In Maine, a rule has been devised which is quite different from the Massachusetts rule, but which has not been so favorably regarded, because it is too complicated for every application. *Emerson* v. *Taylor*, 8 Greenl. 42 ; and see *Nott* v. *Thayer*, 2 Bosw. 10. Even in Mas-

sachusetts the rule has not been invariably applied. In *Gray* v. *Deluce & others*, 5 Cush. 9, flats lying on a curving shore were divided by drawing parallel lines from the ends of the division lines of the upland to low-water mark in such a manner that they would intersect a line drawn from headland to headland of the shore at right angles. And this rule seems to have met the approval of Chancellor Zabriskie in *Stockham* v. *Browning*, 18 N. J. Eq. 391.

In the case before us we are not called upon to partition alluvion or flats, but to determine the extent of the plaintiffs' water front. The principle involved, however, is very much the same in the one case as in the other; and we are therefore not insensible to the guidance to be derived from the decisions cited. But those decisions do not establish any one invariable rule, and it is quite evident that no one of the several rules which they do suggest could be applied in all cases without sometimes working serious injustice. In the case at bar a solid rock projecting out to the main channel has preserved the shore of the plaintiffs from detrition at that point, but has allowed quite a deep inward curve beyond that point, while the shore of the defendants, having no such protection, has conformed more to the course of the river. The consequence is, that if we draw a front line from headland to headland, and then draw the division line so as to give to each set of proprietors a length of front line proportionate to the length of their original shore, the division line will pass diagonally across what would ordinarily be regarded as the water in front of the defendants' land. This is a result which does not commend itself to us as either reasonable or just. We have decided upon another rule, which to us seems equitable, and which for our present purpose, in the circumstances of this case, leads to a pretty satisfactory result. The rule is this: Draw a line along the main channel in the direction of the general course of the current in front of the two estates, and from the line so drawn, and at right angles with it, draw a line to meet the original division line on the shore. This rule is not unlike the rule adopted in *Gray* v. *Deluce*. It will give the plaintiffs as large an extent of water front as we are disposed to allow them; and upon the front so defined we will grant them an injunction to prevent the defendants from encroachment.

*Decree accordingly.*