HAYNES, J.
A petition was filed in this case by the plaintiffs, Isaao Ludwig et al., claiming that they were the owners of all that part of what is known as the Peter Manor,Sr., Reserve, at the head of the rapids of the Maumee river, which is “known and described as the stone quarry in the reports of the commissioners for partition in the cause of John J. Manor et al. v. Joseph Manor et al., Lucas county, Ohio, court of common pleas. (See record, volume VII, page 217, Lucas county, Ohio, Chancery Records.)” And they claim that the defendants entered upon plaintiff’s said premises,Ao-wit: Upon the quarry, and quarried out and .carried away a large amount of stone — to the damage of plaintiffs, it originally was, but that portion has been stricken out; and they still threaten to repeat the acts claimed on said premises. The petition avers that defendants have no right there, and that their repeated trespasses will be of great injury to the plaintiffs, and prays for an injunction to restrain them from repeating these trespasses. This is the substanoe of the suit.
The defendants, for their answer, deny that they have en *710 tered upon plaintiff’s premises and taken and carried away therefrom and converted to their own use a large quantity of stone; they deny that they threatened to enter upon plaintiff’s premises, or to remove or to convert to their own use stone from said pemises in large quantities, or any quantities, or that they intend to otherwise impair or damage plaintiff’s premises by committing waste thereon; and they deny that said plaintiffs are entitled to the relief prayed for in the petition. By way of cross-petition defendants say, that defendant Elias Overly is the owner in fee simple of the piece of land known as Island No. 1 in the Maumee river, situated in Wood county and state of Ohio, containing nine acres of land more or less, being in section 7, township number 5 north, range number 9 east, of said Wood couDty. Said piece of land extends up and down the Maumee river on the southerly side thereof, a distance of--feet. The main channel of the Maumee river lies between said island and the northwest bank of said Maumee river. The said Elias Overly also owns the land bordering on the northwest bank or boundary of the Maumee river, except so much thereof as is owned by the state of Ohio for canal purposes, said Elias Overly being the owner of lots 1 to 55 of Providence village. The defendants further say that between said Island No. 1 and the northwest bank of said Maumee river, the state of Ohiolhas erected and maintained a dam called Providence dam, which backs up the water and leaves the bed of said stream below said dam during the summer season practically dry. For a great many years a stone quarry has been operated in.said bed of the river between the bank of said Island No. 1 and the northwest bank of the river, which said stone quarry is located south of the middle or thread of the channel between said island and the northwest bank of the river, and thereby he is the owner of and entitled to the use and occupation of the stone quarry referred to in the petition; and by virtue also of his ownership of the aforesaid lots bounding and abutting on the northwest bank of said river, he is'also possessed of the riparian right accruing to the owners of the land between said lots and the thread of the channel. Said defendants'say that the stone quarry which plaintiffs claim is situated as aforesaid stated, between Island No. 1 and the northwest bank of the river and south of and between the thread of the channel of the river and said Island No. 1, by virtue of the riparian rights of said Elias Overly, belongs to said Overly. The defendants, Augustus Overly, Louis Overly, George Shoemaker and Daniel Furman have been taking the stone from said quarry by the permission of said Elias Overly.
Said defendants further aver that the plaintiff, Isaac Ludwig, is interfering with the possession of these defendants of said stone quarry, and has taken out stone from various points in the bed of the river above described as belonging to Elias Overly, and unless prevented by the order of this court will continue so to do, to the damage of these defendants. They, therefore, pray that an injunction be issued, restraining said Isaac Ludwig from removing the stone from any portion of the bed of the Maumee river lying between Island No. 1 and the thread of the channel between Island No. 1 and the northwest bank of the river at the point below Providence dam aforesaid *711 described, or from in any manner operating or attempting te operate a stone quarry, or taking stone from the • bed of the Maumee river at any point between the said thread of the channel and the northwest bank of the stream, and at the final hearing thereof said injunction may be made perpetual.
I o that there is no reply filed. So that the title of; the plaintiffs to the premises so described by them, and the title of the said Ludwig to the property on the north shore, stands admitted. The allegation of the parties in regard to the ownerships in the stream are conclusions of law, and stand by the law as it shall be adjudged by the court.
The Maumee and Erie canal was constructed about the year 1887 or 1838. Prior to that time, as appears by maps offered in evidence", the river at the points in question — the northwest shore of it — had something of a bend — that is, bent to the northwest or northerly. There was at a certain point which point is near the dam that is referred to in the petition, and also at or just below the village of Providence, a little cove or indention in the bank, and from that on the easterly side the shore turned a little south and then east, extending in a generally easterly direction, a little south of east. It is claimed by the defendants that there was originally an island at this point in the cove, consisting of about an acre of land, and that there was water running between that alleged island and the main and which, in some seasons of the year, flowed in quite a stream, and at others not at all; but that water of the ordinary mark of that day would flow to some extent between those points. Testimony was offered by the defendants to prove that, and by the plaintiffs to disprove it. We think that there never was an island there, in the sense of.an island, and that whatever was called island was a point of land jutting out into the river, and was a part of the main land — was treated as such by the government, and sold as such, and always considered part of the main land. We think in times of high water, the water would run around there, but there wasn’t a sufficiently distinct current, so that it could be called an island. Many of the witnesses have no recollection of any such current being there; according to their recollection there was none. It is testified by the witnesses for the defendant, who testified as to the original channel at that point, or supposed channel, that there has been no such channel for many years, because the general flow of the water of the river has been diminishc d year by year since those early days. No water would now flow there, even if the land lay as the land originally did.
In 1837 or 1838 the Maumee and Erie canal was constructed, and at this point where the land jutted out the state at that time constructed the dam spoken of in the pleadings. It went from the main shore at this point across to Island No. 1, and then from Island No. 1 across to the main land on the south bank. That would bring he dam a little east of this cove, or just at the point where the shore rounded to th? east;’ and the effect of that dam was, of course, to back up the water and create a pond. Prom the cove west for some distance — some miles, perhaps — the river was used for the purpose of slack water navigation. But at this point of the cove and the dam *712 the' canal strikes into the main land again, and proceeds on east.
This strip of land described in the plaintiff’s petition as lying between the canal and river,is in fact, the main land, but by the digging of the canal takes the form of a peninsula, and is bounded on one side by the Maumee river and on the other by the canal, and is in width from 200 to 250 feet. On it, of eourse, is the berme bank of the canal, of a width of twenty-four feet on top, which falls on a slo;pe of from one to one, leaving the strip of land about the width that I have stated. Testimony is offered tending to show that the original soil is still showing there, and trees are growing there, and the soil is of the depth of several feet above the rock. The town of Providence lies north of the cove, or rather commences, perhaps, about at the cove, and the lots that are described in the defendants’ petition are water lots lying along the river front, and bordering upon the river westerly, and they lie upon the bank of the river which curves a little to the south as it goes west; whereas, the lands of the plaintiffs are upon the bank of the river which curves a little to the south .as it goes east. The state for its canal purposes took quite a piece of land around and west of the dam. It at one time changed the entrance to the canal and straightened out the canal. It also built a breakwater east perhaps 150 feet. There had originally been a millrace running east belonging to Mr. Manor, Sr., but in 1842 he entered into a contract with the board of public works, whereby he settled with the state certain claims for damages that he had for loss of water, and interference with water; and the state at that time agreed to make a tail-race, as I understand it, to his mill, which lies some little distance on the lands; and he on his part granted to the state the fee simple of the lands that were taken or used by it for canal purposes at and around the dam. We think the effect of that is to give the state the title in fee simple to these points of land that are used and occupied around the point, including the head of the dam and the lands below it necessary to the extent of supporting the embankment thrown up for the protection from the water. Indeed, the whole shore from the point to 160 feet below the dam, around the head of the peninsula, is really owned and occupied by the state, in our judgment. There is lying about midway between this northerly bank of the peninsula and Island No. 1 a quarry, as it is called; that is to say, the parties had been in there at low water, and excavated and taken away stone. There is at one particular point a quarry hole there, that is about ninety feet in length and about forty-five feet wide, and near it, a little southeast of it — perhaps some twenty-feet — is an iron pin, which was put there at one time by Mr. Davis, a civil engineer from Wood county, who had made surveys there, who appeared here and testified in regard to it. I mention that for the purpose of identifying this particular hole. It is claimed that the parties who were digging stone at the time ..this dispute arose, were digging in the northerly end of that hole — and I think that is admitted by all parties who have testified, on both sides but under a claim, as is stated in the answer, on the part of the defendants, that the place was within the limits of their lands, while the contention of the plaintiffs is that it falls within the limits of their lands in the river.
*713 There is just below Island No. 1 another island, called Island No. 2, which is owned by the Purdy estate. It lies a little to the northerly of Island No. 1, and to the east. The general course of the river at this point, from the dam on easterly, is, as testified by Mr. Davis, nearly east. Strictly speaking, it is east 15 degrees south, or, to put it in the opposite way, south 85 degrees east. This location is upon what is known as the rapids of the Maumee river. There is a rapid current, and the river below the dam seems to narrow up some. I believe' I have explained the situation, and the questions that will arise under it. We have been furnished with maps made by engineers on behalf of the plaintiffs, and some that were made some time ago by engineers who have been called on behalf of the defendants.
The original contention of the plaintiff was, that they owned to the middle of the river— that is, to the center of the river between the north and the south banks. On the trial here that claim is not made, but the contention is in regard to the banks from the peninsula to Island No. 1. Surveys have been made, and the distance from the northerly point of the peninsula across to Island No. 1, and in a direction a little west of south, is marked about 1010 feet; but that does not come on this side, to the shore line, by about thirty-five feet, if I make it right, but is run from a base line that is drawn by the engineer. The distance across there is, say, 1020 or 1030 feet. The trend of the north bank is a little east of south, so that the north bank faces rather west of south from the peninsula. The island seems to run in an easterly and westerly direction.
Now, we suppose that the rule is well established that the riparian rights of Overly must be measured from Island No. 1; the riparian rights of the plaintiffs, of course, start from the main land which we name the peninsula. And we think it equally well established that the center of the stream between the island and the peninsula is to be the boundary line between the lands of the two parties. Under this rule, we have no question that the work that was being done by the Overlys at the time in question was upon the northerly side of this center line of the stream.
The only question we have had in regard to the matter of its being within the plaintiffs’ land is, as to whether the point where they were at work would fall east of the west line of plaintiffs’land; that is to say, east of the west line drawn from the shore to the center of the stream. We understand the rule to be clearly established, that in order to find the western boundary, they should draw a line, starting from the point where the line of the land reached the stream, and running at right angles with a base line that should be drawn from the point where the east line of plaintiffs’ land touches the river to the point where the west line touches it and corresponding to the general trend of the river.
We are also of the opinion that the state of Ohio must be treated as a riparian proprietor here, and that from a point somewhere 100 or 150 feet east of the dam around to the canal, they are to be treated as shore owners. That, of course, would make the east line of their land, and riparian rights, parallel with the line of plaintiffs upon the easterly side of the state’s property. Now, it is claimed on behalf of' the Ludwigs that *714 if lines were drawn from the property of Ludwigs located in the village of Providence, that the lines would cross the dam and strike into the center line of the river at a point that would very nearly include this land in question: but that contention cannot be maintained. Under well established rules, the moment a line drawn in that direction reached the lands of the state of Ohio, it would be deflected,and would not reach over to that point at all. So that we hold that the claim of the defendants that their shore line from the north shore would reach or affect plaintiffs’ property is not well taken or sustained by the evidence. I am inclined to think that covers all the points of this case material to this controversy.
A. W. Eckert, E. W. Tolerton, for Plaintiffs.
J. K. Hamilton, E. O. King, for Defendants.
It is said here that Elias Overly, the father of the defendants, who has the title to Island No. 1, was not present at any of these times; but the answer shows that he was the owner of Island No. 1, and that he was claiming this property while these men were at work, and that they were at work under him. That is in the answer filed by him in connection with the other defendants, and filed by all of them; so that we think he ought to be included in whatever judgment is rendered by this court.
The judgment of the court will be in favor of the plaintiffs, restraining these parties from quarrying atone at the points named, or within the limits of the plaintiff’s land at any point north of the center line of the channel between Island No. 1 and the peninsula. The question here has been long in dispute, there has been a great deal of controversy about it, and there has been some doubt and uncertainty about it; and we are of opinion that as to the costs, each party should pay his own costs in the ease, and that is the order of the court.