DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Appellant-plaintiff Lawrence E. Tillack has appealed a judgment of the Lorain County Court of Common Pleas granted in favor of appellee-defendant the Connone Family Trust ("Connone"). This Court affirms.
 I.
Tillack and Connone are owners of adjacent waterfront property on the Black River in Lorain County, Ohio. Tillack's property is located at 168 East Erie Avenue. Connone's property, which is immediately south of Tillack's property, is designated as 220 East Erie Avenue.
In 1989, Connone constructed a dock that was used jointly by Connone and Tillack's predecessor in title, Edward J. Gross. The dock was located where the western border of Connone's property and the eastern border of Gross' property met the Black River, a point at which the shoreline is uneven. The dock was attached to Connone's property. Connone used the eastern side of the dock to further its marine business. In exchange for plumbing services rendered to Connone, Connone allowed Gross to use the western side of the dock for recreational purposes.
Tillack purchased the property from Gross in 1993. Tillack's deed makes no mention of the dock. In 1994, the dock was destroyed when a barge crashed into it. Both Tillack and Connone recovered on insurance claims made to the barge's liability carrier. Tillack salvaged the dock, claiming that the dock was within his riparian boundary, and in 1995, Tillack received permission from the Army Corps of Engineers to build a replacement dock. However, before Tillack could begin construction, Connone built a dock in approximately the same location as the one previously destroyed.
Tillack filed suit in the Lorain County Court of Common Pleas, claiming that Connone's replacement dock trespassed on Tillack's riparian rights. Connone counterclaimed. Both parties filed cross-motions for summary judgment. Finding that the evidence established that the parties' riparian rights enter the Black River at an angle perpendicular to the waterflow and extend to the middle of the river, and that the boundary lines should "be drawn at right angles from the points where the property touches the river as shown in Exhibit C to the parties['] stipulations[,]" the trial court granted partial summary judgment in favor of Connone.
In an effort to determine from which point the parties' riparian rights should be drawn, additional evidence was submitted which included expert reports. Moreover, the trial judge personally viewed the site, and then conducted a hearing on the matter. The trial court found that both parties had unnaturally extended their shoreline, and that consequently, the riparian boundary line must be drawn from a point determined by the shoreline as it existed before the unnatural extension occurred.
Connone dismissed the pending counterclaims, and Tillack timely appealed. Tillack has asserted three assignments of error which have been rearranged for ease of discussion.
 II. ASSIGNMENT OR ERROR III THE TRIAL COURT ERRED IN HOLDING THAT THE INTERSECTION OF THE CURRENT WATER BOUNDARY AND LAND BOUNDARY IS A RESULT OF AN UNNATURAL EXTENSION OF THE SHORELINE.
In his third assignment of error, Tillack avers that the trial court erred in finding that either party had unnaturally extended their shoreline. Tillack asserts that the trial court's selection of the starting point for measurement of the parties' riparian rights was based upon the erroneous finding of an unnatural extension, and that therefore, the matter must be reversed for a calculation of the parties' riparian rights, starting from a point where the parties' upland boundary currently intersects the water. This Court interprets Tillack's assignment of error as challenging the trial court's finding that the parties had unnaturally extended their shorelines as against the manifest weight of the evidence.
In determining whether a civil judgment is against the manifest weight of the evidence, this Court must:
 review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered.
Frederick v. Born (Aug. 21, 1996), Lorain App. No. 95CA006286, unreported, quoting State v. Shue (1994), 97 Ohio App.3d 459, 466. This action is reserved for the exceptional case, where the judgment is "so manifestly contrary to the natural and reasonable inferences to be drawn from the evidence as to produce a result in complete violation of substantial justice[.]" Hardiman v. Zep Mfg. Co. (1984),14 Ohio App.3d 222, 226, quoting Royer v. Bd. of Edn. (1977), 51 Ohio App.2d 17, 20.
Tillack argues that "no evidence was adduced at the trial" which supports the court's finding that the parties had unnaturally extended their shorelines. Tillack states that he personally "testified that the current bulkhead forming the water boundary of the Tillack property had existed in essentially the same manner as it appears today from the 1960's." Tillack also points to the testimony of Jack L. Connone, wherein "Connone testified that the fill spread behind the Tillack bulkhead was used to bring the level up to the top of the bulkhead of existing land there." In opposition, Connone states that "[t]he testimony taken at trial clearly reveals significant filling taking place on Tillack's property by Tillack and his predecessors. The result of the filling was not by a natural and imperceptible means." It appears that Connone has attempted to argue that the extension to Tillack's land is the result of an unnatural avulsion.
A review of the entire record, including the testimony of the parties and the civil engineer, as well as the 1979 tax map and the stipulations filed on May 21, 1997, show that the trial court's finding that the shoreline has been unnaturally extended is not against the manifest weight of the evidence. This Court notes that the trial court spent considerable time and effort in this determination; the trial judge visited the site and personally inspected the area.
Accordingly, Tillack's third assignment of error is overruled.
 ASSIGNMENT OF ERROR I THE TRIAL COURT ERRED IN USING THE 1961 CONSENT DECREE, WHICH DID NOT INVOLVE APPELLANT OR HIS PREDECESSORS IN TITLE, AS THE BASIS FOR A DETERMINATION OF THE RIPARIAN RIGHTS OF THE PARTIES.
 ASSIGNMENT OF ERROR II THE TRIAL COURT ERRED IN HOLDING AS A MATTER OF LAW THAT THE DOCK IN ISSUE HERE WAS WITHIN APPELLEE'S PROPERTY[.]
Because Tillack's first and second assignments of error raise similar issues of law and fact, they are addressed in tandem.
Tillack moved for summary judgment on his trespass claim, asserting that Connone had erected the dock within Tillack's riparian rights. In support, Tillack presented the court with a number of different methods with which to apportion the parties' respective riparian boundaries. Tillack averred that no matter which of these methods the court chose to apply, the result showed that as a matter of law, Connone's dock was trespassing on Tillack's riparian boundary. The apportionment methods upon which Tillack relied were based upon caselaw from a number of states other than Ohio. The cases supported Tillack's contention that his riparian rights extend into the Black River by drawing a straight line from the upland boundary line of his property. Tillack recognized that although sparse case law existed on the issue, the measurement of riparian boundaries had been addressed in Ohio. Tillack argued, however, that such case law was inapplicable to the present case.
In opposition, Connone asserted that, as a matter of law, the riparian rights of adjacent landowners go into the Black River not in a straight line, but perpendicular to the waterflow. Connone further asserted that pursuant to a 1961 consent decree, it had previously been determined that Connone's riparian rights at its southern property line enters the Black River at an angle.
The trial court determined that summary judgment in favor of Connone was appropriate. It reasoned:
 In 1958, Lorain County Common Pleas Court Case No. 63434, a consent judgment was entered into between Connone and the neighbors to the east, establishing that Connone's riparian rights do not extend into the Black River in a straight line but at an angle. It is the finding of this court that while this judgment is not binding on [Tillack], who is the owner to the west, the judgment establishes that [Connone's] riparian rights do not enter the Black River in a straight line.
* * *
 This Court further finds that as to the issue of how each party's rights enter the Black River, that due to the irregular shoreline and based upon the 1958 case, that [Connone's] riparian rights enter the Black River at an angle perpendicular to the water flow, as does [Tillack's] rights. The lines shall be drawn at right angles from the points where the property touches the river as shown in Exhibit C to the parties['] stipulations. Specifically, a line shall be drawn at a right angle from the southern most corner of [Connone's] property and [Connone's] riparian rights shall extends [sic] to a parallel line even with a right angle drawn from the southern most corner of [Tillack's] property where it intersects the border of [Connone's] property. In essence, a line parallel to the northern edge of the dock in dispute. This Court finds as a matter of law that the dock is within [Connone's] property.
In his first assignment of error, Tillack avers that the trial court committed reversible error in relying upon the 1961 consent decree in determining the parties' riparian rights. He asserts that it is "clear that the lower court recognized the irregular shoreline and based its decision entirely upon the consent decree, which is both legally incorrect and unfair."
In his second assignment of error, Tillack contends that the trial court erred in holding "that the parties' riparian rights entered the Black River at an angle perpendicular to the water flow, with a boundary line to be drawn at right angles from the point where the southernmost corner of Connone's property touches the river." Therefore, Tillack avers that the trial court erred in finding that Connone's dock did not trespass on his riparian rights. In support, Tillack states that the trial court failed to provide a reason for its conclusion, and cited no case authority other than the 1961 consent decree. Tillack further asserts that the apportionment methods provided in the foreign cases he cited in his summary judgment motion show that the trial court erred. This Court disagrees.
In reviewing a trial court's entry of summary judgment, an appellate court applies the same standard used by the trial court. Perkins v.Lavin (1994), 98 Ohio App.3d 378, 381. Pursuant to Civ.R. 56(C), summary judgment is proper if: (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party. Temple v.Wean United, Inc. (1977), 50 Ohio St.2d 317, 327.
First, neither party disputes the general rule that the riparian rights of owners extends into the middle of the river, subject to an easement for navigation. See Pollock v. Cleveland Ship Bldg. Co. (1897),56 Ohio St. 655, 666. Therefore, the trial court properly concluded that, as a matter of law, the riparian rights of both Connone and Tillack extend from their property into the middle of the Black River, subject to an easement for navigation. See id.
Second, while there is sparse case law on this issue, Ludwig v. Overly
(1895), 19 Ohio C.C. 709 announced a method for determining riparian borderlines. Where there is an irregular shoreline along a river, the riparian boundary as it extends into the river, can be determined by establishing a baseline from which to determine the angle at which the riparian boundary extends from the shoreline to the middle of the river. See id. This Court finds Ludwig persuasive and adopts its method for determining riparian borderlines where there is an irregular shoreline.
Applying Ludwig to Connone's property, the baseline is established by drawing a line that connects the eastern-most point of Connone's shoreline, with the western-most point of Connone's shoreline. A line is then drawn at a right angle to this baseline, and extended to the middle of the river. This determines the angle at which the riparian boundary line will project into the river at the western boundary abutting the Tillack property. The result is that Connone's dock is within Connone's riparian border.
Tillack argues various contrary methods for determining riparian borders, none of which rely upon Ohio law. Tillack would have this Court ignore Ludwig and create new law for Ohio. We decline Tillack's invitation.
Tillack asserts two preferences from among the various cited methods. First, Tillack argues that riparian border rights should be determined by extending the upland sidelines of adjoining owners' property, without change of direction, into the river. See Langley v. Meredith (Va. 1989),376 S.E.2d 519. Unlike the case at hand, Langley did not involve a curving shoreline, but rather a straight shoreline that ran "virtually east-west." See id. at 522. In its decision, the Virginia Supreme Court also noted that applying this method under circumstances where the shore curves, would "necessarily, and unjustly" encroach on the riparian rights of other adjacent property owners. Id, 376 S.E.2d at 523, citing Gronerv. Foster (Va. 1897), 27 S.E. 493, 494.
Tillack alternatively urges this Court to adopt a method of projecting lines at right angles to the course of the river or line of channel. SeeJ.S. Thornton Co. v. Smith Grant Co. (1873), 10 R.I. 477. The approach Tillack cites bears some resemblance to the methods contained in the 1961 consent decree and in Ludwig. This Court notes, however, that Tillack concedes that the application of Thorton to the case at hand would place at least a portion of the dock within Connone's riparian border.
This Court finds nothing in Tillack's examples of persuasive authority that improve upon the guidance afforded by Ludwig. The rule of law established in Ludwig is a valid method by which to determine the riparian rights of parties, and has not been changed or modified by any Ohio court. See id.
Whether the trial court relied upon the methods set forth in the 1961 consent decree to determine riparian rights is irrelevant. This is so because the methods are consistent with Ohio law.
This Court finds that the trial court did not err in determining that, in viewing the evidence in a light most favorable to Tillack, Connone's dock is within Connone's riparian boundary as a matter of law.
Tillack's first and second assignments of error are overruled.
 III.
Accordingly, the judgment of the court of common pleas is affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to appellant.
Exceptions.
 ___________________________ DONNA J. CARR
BAIRD, P. J., WHITMORE, J., CONCUR.