[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION
This matter is before the Court so that it can expand upon its March 1, 2004 Decision denying Plaintiff's Motion to Strike Defendant's Jury Demand. In that Decision the Court announced its intent subsequently to file an articulated and reasoned decision explaining said denial.
 HISTORY OF THIS CASE
In October of 1999, the Attorney General of the State of Rhode Island instituted this lawsuit by filing a complaint against several lead pigment manufacturers and a trade association. For a general description of that lawsuit, see this Court's Decision filed herein on April 2, 2001. State v. Lead Indus. Ass'n., C.A. 99-5226, Superior Court of Rhode Island, Providence, 2001 LEXIS 37. From the time of its filing to date, this case has been the subject of extensive motion practice and of extensive discovery. In the Fall of 2002, the Court conducted a seven-week jury trial limited by order, to a single question:
 "Does the presence of lead pigment in paint and in coatings in homes, schools, hospitals, and other public and private buildings throughout the State of Rhode Island constitute a public nuisance?"
Following that trial, the jury was unable to agree on a unanimous answer to the question and this Court declared a mistrial.
In connection with the issue addressed in this decision, it is appropriate to note that the parties throughout the pleading stage have claimed trial by jury and indeed further to note that the issue of jury versus non-jury previously was raised and was at least in part, the subject of this Court's Memorandum of Decision, filed herein on March 15, 2002, Whitehouse v. LeadIndustries, Ass'n. C.A. No. 99-5226, Superior Court of Rhode Island, Providence 2002 R.I. Super., LEXIS 43, where at the urging of Defendants the Court ordered trial by jury without deciding if Defendants, as a matter of constitutional right were entitled to trial by jury, Plaintiff acquiescenced in that decision. (See said Memorandum of Decision page 4 and 5).
Through the aforesaid motion practice certain causes of action, or portions thereof, were dismissed from the case. Certain Defendants also were dropped from the case. Recently, various claims of the Plaintiff, essentially tort claims dealing with alleged injury to state-owned properties which had survived earlier motion practice, were dismissed at the instance of the Plaintiff. (See Order of this Court dated February 27, 2004).
Asserted contemporaneously with the expression by Plaintiff of its desire to dismiss the claims last mentioned, was the Plaintiff's claim that because following the dismissal of the aforementioned tort claims ". . . the claims remaining in this case, are solely equitable claims. Equitable claims do not give rise to a right to a jury trial and must be tried to this Court." (See Plaintiff's Motion to Strike Defendant's Jury Demand and to Amend the Scheduling Order at page 1).
In contradistinction to Plaintiff's position, Defendants assert that they ". . . have a constitutional right of jury trial on the State's public nuisance claim, because the public nuisance cause of action is one historically tried at law (and) second, Defendants have a constitutional right of jury trial on all claims, including unjust enrichment and indemnity, as well as public nuisance, because the pleaded remedies of compensatory and punitive damages are ones historically tried at law." (See
Defendant's Brief in Opposition to Plaintiff's Motion to Strike Defendant's Jury Demand and to Amend the Scheduling Order at page 1).
It is significant to note that these issues arose and were decided only shortly before the scheduled retrial of what has come to be denominated as "phase one" in which opening statements to the jury were scheduled for April 5, 2004.
The retrial of phase one was to present the jury with but a single question (albeit, a different iteration of the question put in October 2002) to wit:
 "Ladies and Gentlemen of the Jury, you now have been fully instructed on the law with respect to this matter. Do you find, consistent with all of those instructions, that a consequence of the presence of lead pigment in paint and coatings in buildings throughout the State of Rhode Island and, if any, the harm and/or threat of harm resulting there from is a public nuisance?"
Trial now has been continued to April 6, 2005 in anticipation of an appeal or other review of this Court's March 1, 2004 Order denying Plaintiff's Motion to Strike Jury Demand. The rescheduled trial, rather than asking either of the single questions heretofore designated, will determine are the Defendants or any of them liable to Plaintiff under all, some or any of the remaining counts of the Second Amended Complaint?
 THIS COURT HAS ORDERED TRIAL BY JURY — WHY?
The proper determination of Plaintiff's Motion to Strike Defendant's Jury Demand requires a two part analysis:
 (a) What claims remain under the present iteration of the Second Amended Complaint following the February 27, 2004 Order and what relief is demanded?
 (b) In this case under what circumstances are Defendants entitled to trial by jury?
 A. What claims remain and what relief is sought?
A review of the Second Amended Complaint discloses the following remaining courses of action asserted against Defendants: Count I — Public Nuisance Common law (See Decision April 2, 2001 at 15); Count II — Violation of Rhode Island Uniform Trade Practice and Consumer Protection Act G.L. 1956 §6-13.1-1 et seq.; Count VII — Civil Conspiracy; Count VIII — Unjust Enrichment and Count IX — Indemnity.
Further review of the Second Amended Complaint reveals that Plaintiff seeks not only injunctive relief but also specifically asks for compensatory and punitive damages (See Second Amended Complaint at page 24, Relief Requested 1 — 5.)
B. Under what circumstances are Defendants entitled to trialby jury.
The Constitution of the State of Rhode Island and Providence Plantations contains as Article I, a declaration of certain constitutional rights and principles. Included within that Article is Section 15. Trial by Jury. The first sentence of that section provides as follows:
"The right of trial by jury shall remain inviolate."
This Court in ruling as it has, i.e. in denying Plaintiff's Motion to Strike Defendants' Jury Demand, of necessity was required to determine the meaning of that sentence. In so doing, the Court was aided by the thorough briefing and able arguments presented by counsel on both sides of the issue.
In reaching its decision, this Court sought to trace back historically the reasoning of the decisional law called to its attention as well as the learned legal and equitable treatises and or commentaries presented.
The Court noted that there was scant question but that ". . . constitutional provisions which preserve inviolate the right of jury trial as it stood at the time of the adoption of the constitution have been held to give a party to an equity cause a constitutional right to a jury trial in that cause on any issues of legal right that were triable by a jury at the time the constitution was adopted." Maryland Casualty Company v. Sasso,204 A.2d 821, 825 (R.I. 1964) (explaining intent of legislature in enacting statute giving judge sitting in equity certain discretion in framing issues for a jury — case decided on abuse of discretion grounds no need to reach constitutional issue.) Of course, Sasso was decided prior to the adoption of our Superior Court Rules of Civil Procedure and accordingly before the merger of law and equity.
Two more recent cases were deemed by this Court to be significant to its decision. These cases are DiPardo Sons Inc.v. Lauzon, 708 A.2d 165 (R.I. 1998) and Fud's Inc. v. State ofRhode Island, 727 A.2d 692 (R.I. 1999).
The DiPardo case involved the question of the claim of jury trial in a cause seeking injunctive relief and money damages arising out of alleged tortuous interference with contractual relations.
In DiPardo, after discussing Sasso, the Court stated that the case at bar (DiPardo):
 ". . . requires us to decide whether the legislative policies, constitutional considerations, and traditional practices underlying the Sasso Rule, counsel continued vitality in the context of our modern Rules of Civil Procedure. We believe that they do and that sound practice continues to require the Superior Court to conduct a jury trial upon a timely request with respect to any underlying legal issues in a civil action which were traditionally cognizable at common law when money damages were sought even when a complaint requests substantial equitable relief. By confirming the continuing viability of the Sasso Rule after the merger of law and equity, we pay homage to a constitutional influenced policy that favors the jury trial and requires the determination of legal issues by a jury, even though certain issues in the case may be equitable.'" DiPardo at 170.
The DiPardo Court also opined that:
 "The constitutional right to have issues of fact determined by a jury is preserved as it existed at common law at the time of the adoption of our original constitution in 1842, which became operative on May 2, 1843 . . . this Court, when analyzing the right to jury trial under our modern constitution, will continue to look to common law forms of action as they existed when Rhode Island's original constitution was promulgated in the early 1840's." DiPardo supra, at 171.
Further, in more fully discussing Sasso, the DiPardo Court stated that:
 "The Sasso Rule of practice in seeking to promote the use of a jury to resolve disputed factual issues when `the rights sought to be determined and enforced are essentially legal, as to distinguished from equitable rights.' Sasso requires the Superior Court to submit to a jury any claims that could have been litigated in an action at law in 1843, even if the Court is also asked to provide equitable relief in the first instance and then permanently after a trial. And this is so even if the entire action could have been brought before the premerger equity Court." At 172.
The Court went on to state that if the claim for money damages was cognizable at law in 1843, then the Sasso Rule would require that ". . . disputed factual underpinnings" would be submitted for determination to a jury even if the claims for equitable relief would have provided access either to law or to equity.
Hereafter, this Court will explore the issue of whether claims similar to the claims here asserted could have been tried to a jury at the time of the adoption of our constitution. However, before embarking on that exploration a discussion of our Supreme Court's opinion in Fud's Inc. is in order.
In Fud's, the Court treated with a question certified to it by this Court — "Do employers have a constitutional right to jury trial in connection with unlawful employment practice charges that are brought against them?" Fud's Inc. supra at 693.
At 695 the Court stated:
 "We also try to assay whether the type of relief available for the Cause of Action is legal or equitable. Indeed, this available relief analysis is `more important than finding a precisely analogous common law Cause of Action in determining whether' Art. 1, Section 15, mandates the opportunity for a jury trial."
Further, and on the same page, our Supreme Court recognized that actual and punitive damages (relief here sought by Plaintiff) is the traditional relief sought in a court of law.
 "Historically, punitive damages have long been considered a form of legal relief in this state." Further, it observed that "Although separate courts of equity have been abolished in Rhode Island and in many other jurisdictions, we nevertheless take note that, in days of yore, equity courts could not award punitive damages, as only courts of law were permitted to do so." Fud's at 696.
After reviewing authorities from a number of jurisdictions, our Supreme Court concluded that ". . . in light of historical and contemporary jurisprudence we . . . categorized punitive damages as legal in nature."
The Fud's Court continued at 697 to state:
 "Because we conclude that an important and potentially substantial component of the (statutory) relief available here is legal in nature and that the cause of action itself is more analogous to an action triable before a jury in an 1843 Court of law than to any equitable cause of action we conclude . . . (such relief) triggers . . . rights to a jury trial."
While it is of course true that the Fud's Court was dealing with a specific statutory scheme and the case at bar evolved out of the common law (save only for the claims asserted by Plaintiff in count II pursuant to the Rhode Island Uniform Trade Practice and Consumer Protection Act) this Court has discussed the Fud's
opinion because it demonstrates our jurisprudential thinking favoring jury trials if actions analogous could have been tried to a jury and if money damages are a substantial part of the relief sought.
Having dealt with contemporary authority and having seen that our cases as well as the constitution, favor in appropriate matters trial by jury this Court notes that the first sentence of Section 15 of the Declaration of Rights provides that "the right to a trial by jury shall remain inviolate." (emphasis added) The use of the word "remain" suggests, as our case law has held, that if the right to trial by jury of a particular kind of case (or one analogous thereto) existed at the time of the adoption of our constitution, then that right, if timely demanded, continues now to exist.
In order to determine whether matters of this nature (or ones analogous thereto) were to be tried to a jury at the time of the adoption of our constitution, this Court has been directed by Defendants to the writings of a legendary constitutional scholar, and Justice of the United States Supreme Court, Joseph Story. In his commentaries on Equity Jurisprudence as Administrated in England and America,[1] Justice Story wrote:
 "in cases of public nuisances, properly so called, an indictment lies to abate them and punish the offenders. But an information also lies in equity to redress the grievance, by way of injunction. The instance of the interposition of the Court, however, are (it is said) rare and principally confined to informations seeking preventive relief."
The court here notes that while injunctive relief (equitable relief) is sought by Plaintiff in the Second Amended Complaint as aforesaid, the sale or distribution of paint or covering containing lead pigment had been proscribed by federal legislation since 1978 so that an injunction here to prohibit the sale, distribution or use of paint or coverings containing lead pigment would avail little or nothing by way of relief for the Plaintiff.
Judge Story continued in his learned commentary by writing at 203:
 "But the question of nuisance, or not, must in cases of doubt, be tried by a jury; and the injunction will be granted or not, as that fact is decided."
See, for example, Attorney General v. Cleaver 18 Ves. Jun 212, 218 (1811). See also, Attorney General v. UnitedKingdom Electric Telegraph Company, 30 Beav. 287. The LawTimes, Vol. V., N.S. 338, 339 (1861). Consistent with the foregoing and suggesting the unique province of a jury in determining whether a nuisance exists is the case of Thornton v.Smith Grant, 10 R.I. 477, 484 (1873). (dicta because cause before Court on motion to dissolve preliminary injunction).
Finally, in a case wherein as here both equitable relief as well as money damages were claimed in a nuisance action. SeeHudson v. Caryl, 44 N.Y. 553, 555 (C of A N.Y. 1871) where New York's highest court in dealing with its state's 1846 constitution, trial by jury provision, Art. 1 § 2 (similar to our Art. 1 § 15) stated as follows:
 ". . . the action, when brought for the double object of removing the nuisance and recovering the damages occasioned by it, was always tried by jury. The ancient remedy was by assize of nuisance, commanding the sheriff to summon a jury and view the premises; and if the jury found for the Plaintiff, he was entitled to judgment `of two things' first, to have the nuisance abated and second to recover damages." (3 Blackstone Com., 220).
Today of course, a prevailing party in a contested case upon judgment is entitled to such relief as it may be entitled to even if not demanded (Rules of Civil Procedure 54(c)).
It was on the basis of the foregoing, specifically the Court's finding that in days of yore matters with respect to the existence of nuisance of this nature (or analogous hereto) would of right be factually determined by a jury and further that the demand for compensatory and punitive damages in no way could be held, under the circumstances of this case, merely to be incidental to the other relief sought, that militated for the decision heretofore made to deny the motion by Plaintiff to Strike Defendants' Jury Demand.
Finally, this Court notes that early on in these proceedings, the Attorney General argued that nuisance always, always, always, was a crime at common law — further, he suggested that he gave thought to proceeding here by criminal information. This Court notes that one of the demands for relief asserted by Plaintiff is for punitive damages — Under the law of our jurisdiction:
 "(A)" party seeking punitive damages has the burden of producing `evidence of such willfulness, recklessness, or wickedness, on the part' of the party at fault, as amount(s) to criminality for which the good of society and warning to the individual ought to be punished." Palmisano v. Toth, 624 A.2d 314, 318 (R.I. 1993).
There can be no question but that the issue of criminality implicates the right to trial by jury.
It follows that because trial by jury is required and because all liability issues under all counts are to be tried together, that trial by jury is mandated at least in respect to all disputed facts.
[1] Hilliard Gray Company, Boston, 1836 Vol. 2 page 202-203, Section 923.